Good morning, everyone. We have four cases on our docket today. One case ended up being submitted and so our plan this morning, at least right now, is to take a break after two cases and then come back and do the last two. I'm going to call the first case, Parisi v. GreenSky, case number 236218. Yes, Your Honor. Diane Palmer for Oklahoma Windows and Doors. Good morning, Your Honors. Barry Goheen for the GreenSky plan. Good morning, Your Honors. I appreciate the opportunity to be here. My co-counsel, GreenSky, and I are going to be splitting our time, so I will be taking the first six minutes, he will be taking the second six minutes, and we will be reserving one and a half minutes each for rebuttal. And you understand that's on you. I'm not going to keep track for you. Yes, Your Honor. Okay, thanks. The issues we think that decide this case are what type of challenge Parisi made below in the district court, and did that challenge apply to the arbitration agreement or to the entire agreement as a whole? Because 60 years of jurisprudence in the Supreme Court says that the challenge to an argument as a whole goes to the arbitrator to decide. And the first issue I want the court to pay attention to is the type of arguments that were raised below. Parisi argued lack of meeting of the minds of essential terms and lack of consideration because the parties did not agree on financing terms. Who made the original offer vis-a-vis Anderson and Parisi? Your Honor, the offer was made on the IPAD, essentially. Who made the offer? It would have been RBA. Okay. And it would have been executed on that IPAD, and she signed not once but twice to confirm her agreement to the terms of the contract, Your Honor. But we think that, you know, she now argues fraud in the execution and lack of notice of reasonable terms. Let me ask you another question. Okay. Your position is, is that once you put the IPAD in front of her with the offer, and she signed all the pages on the IPAD, that you had a deal? Oklahoma law says that a party is bound by the contract that they sign. Okay. So you say they had a deal? Yes. All right. What would have happened if Green Sky had responded not that she was approved, but on the contrary, they had said, we deny her any financing at all? We believe that the contract between RBA and Parisi would still stand. And the reason is the windows contract, in and of itself, you look at the four corners of the contract, and only the four corners of the contract, it says that we entered into a contract for the installation of windows at a specific price, and it has a Green Sky financing form. It does specify the plan that she was approved for, or supposed to be approved for. And the determination, essentially, of what that Green Sky financing form really means is essentially going to be decided on the merits of the case. Would she have had windows? Of course. I mean, why doesn't she have windows now? I mean, if you had a deal, and you were ready to perform, and you were going to perform, and the financing fell through, why doesn't she have windows? Well, I think that goes to the merits of the case, instead of dealing with the issue of who decides, essentially, whether or not- What I'm trying to decide is whether you, whether Anderson really believed that they had a deal before financing came through. Yes. And the way this usually works, this is not really part of the record, but the way this usually works is that we get a down payment, and that allows us to order the windows. We order the windows. Once we order the windows, we can't cancel it, just like Parise can't cancel her contract. And then once we get the windows in, we schedule an installation. And the reason that I believe that this wouldn't have been, the installation of the windows wouldn't have occurred is because she disputed the financing. Again, that's not part of the record here. The real issue is whether or not the arbitrator decides if this issue, whether the arbitrator decides whether the contract is valid or not. Fair enough. Go ahead. Well, the window agreement references the promotional financing, 3541. What does that mean in terms of what the window agreement really is? It's going to be up to an arbitrator, we believe, to decide exactly what that is.  Let's just skip that. Just go to us. That's an issue that we may have to address. Right. Well, it's our position that essentially that was not a contingent term. It was simply identifying that she was financing the purchase and the type of plan that she applied for. And then it specified essentially that the terms and conditions that she needed, that governed her loan, needed to actually be dealt with with Green Sky. Well, then it references generally financing in another place, doesn't it? It does reference financing. Isn't that reference ambiguous because of the other reference to 3541 financing? I don't think so. I mean, I think financing was part of the deal. We knew that she was going to finance it. But this reference to promotional financing being in there, doesn't that reflect upon the state of mind of one of the parties to this purported agreement? I think what the contract says, the four corners of the contract, it says that this was supposed to be a finance transaction. But it also had other terms that still bounded to the contract. It wasn't contingent. No, that's not my question. I'm saying, doesn't the reference to the promotional financing in the window agreement indicate what the plaintiff's state of mind was vis-a-vis entering this contract? I believe it indicates what it says. And it indicates that the... You're not going to answer my question, are you? You can say yes or you can say no. Does it reflect upon the plaintiff's state of mind in entering into this purported agreement? I believe what it references is what the parties agreed upon. And they agreed upon that this is the term of agreement that financing that she was applying for. So you didn't give me, I asked for a yes or no, and you didn't give me either one. Does it reflect upon her state of mind? It reflects upon the, I guess, the intentions of both parties, essentially, of what they agreed upon. All right. So promotional financing is what it means, correct? The promotional financing, you know, I think if you look at this, look at this transaction, the only dispute we really have are financing terms, right? I mean, she agreed to purchase the windows. There was no dispute whatsoever except for when, you know, when she didn't get approved for the financing. But she said, her testimony is that she made it clear that she only could purchase the if she had the promotional financing. And she did. And that's what we put on the contract, and that is what is on our contract, on the four corners of our contract. And she didn't get the promotional financing, but somehow she got a contract plus 25 percent. And that happens. You know, sometimes people don't qualify. It doesn't mean it's fraud in the execution or misrepresentation. It just means that she didn't qualify. And if she didn't qualify, then, you know, we would have to have the arbitrator of the court decide essentially what that means. Does that mean it's an invalid contract? Does that mean it's illusory? But still, it doesn't come down to the formation of the contract. And the formation of a contract actually occurred, which, and the formation of the arbitration agreement actually occurred, which means the decisions that we're making today, the decisions that the district court made, they all should have gone to the arbitrator to decide. And I'm sorry, but I have to give my co-counsel time.  I've got one more question. So, who drew down on the shopping pass? Who authorized the payment? That is a Green Sky question. Well, you got the money. We did get the money from Green Sky. Right. Yes. And all the briefs use the passive voice on that. It was drawn down. So, did Anderson, is it your position that Anderson did not request the funds so it can be drawn down? I mean, how did that happen? Again, this is not in the record, and this is why, if there are these disputed issues, there really should be a formation trial. But the way that that would have occurred typically is if we entered into the contract. Well, there is evidence in the record. She said she did not authorize it. Well, she entered into a contract agreeing to a deposit, essentially, from the financing, which we received. Where is that in your contract, that she agrees you can draw down the shopping pass? There's the deposit, and the deposit is being financed. Well, it says she's going to pay a deposit. Again, it's an interpretation. You said she still has to pay it even if there's no financing. Yes, Your Honor. We do believe that that's what the contract says. Yeah, so there's got to be something authorizing the payment. I mean... The contract in and of itself would have authorized the payment. Do you dispute that she didn't authorize it? Do we dispute that she didn't authorize it? No, we think that she did authorize it. Okay. Yes, Your Honor, and I would like to give my counsel time. Just a minute. Do you have any more questions? No. Okay, thank you. Okay, I want to ask you, who authorized the payment? It wasn't GreenSky, Your Honor. Somebody told you to release the money. That's right, and I don't... GreenSky does not have that visibility, Your Honor. GreenSky is the servicer of the loan. It didn't fund the loan. It's not a party to the loan agreement. All GreenSky sees is a request to use the funds. GreenSky doesn't fund the loan. It doesn't... GreenSky is owned by the lender, though, correct? No, GreenSky is not owned by the lender. It's wholly independent of the lender. Absolutely, Your Honor. That's one thing that the district court had made several fundamental misunderstandings of what is going on here, but that was the most critical one because... I'm sorry, Your Honor. Go ahead. The loan agreement does say there is no loan without the authorizing transaction, right? That's correct. It says that the use of the loan will create the contract, all terms of the agreement. That is acceptance, and that's what happened here. But isn't it also true that the plaintiff didn't need to use the loan if she were to get windows? She could pay it Anderson independent. She doesn't have to borrow money to do that, even though she may have a loan agreement. Isn't that correct? That's absolutely correct. Okay, then why then should they allow Anderson to come in and take its share of the lending transaction up front before there's been a window installed, before anything happened, and to charge this plaintiff $8,000-plus? That's not a GreenSky. I don't know what GreenSky says. GreenSky is the servicer of the loan, and it operates the GreenSky program. It does not run the lender. It doesn't. It has no control over the lender. That's simply they are a servicer of loans through which this network of merchants, which Anderson would be, and consumers and banks. But this transaction on the $8,000 that went to Anderson had to go through your client as a servicer, correct? GreenSky serviced the loan once it was drawn down upon. That's correct, Your Honor. That's correct. But other than that, as I said, GreenSky has no visibility into that, and all GreenSky knows, and that's why the loan agreement says what it says. Once the loan is drawn down upon, and it's also why it says by the borrower or authorized user, then there's a contract which includes the arbitration agreement. And so in this case, GreenSky sees that there's been a use. Now, whether that use is authorized, that's what's been delegated to the arbitrator. All the district court had to do here, and the district court did this, was two things, and they're undisputed. One was, well, is there a contract? What does it say? We know that for sure, right? We know there was a contract that says here's what it forms. Here's what forms a contract. And number two is the contract was, quote, used. There was use. So right there, that's where the district court should have stopped, by going further and saying, well, Parisi disputes whether that was authorized. Okay, that may be a fair fact question for the arbitrator. There's the delegation provision that's never been disputed here that it applies. That's exactly the case. Who did she delegate authority to? I beg your pardon, Your Honor? Who did Parisi delegate authority to? The parties delegated, not Parisi, Your Honor. The parties delegated to the arbitrator. No, no. On the drawdown of the money. You said she accepted because somebody took the money out of the shopping pass, but you don't know who. No, Green Sky has no visibility into that. Right. So how do you even know if she did it? I mean, if I did it, you're not going to. If I was a random third party who went in and authorized the drawdown, you wouldn't say that she had to arbitrate whether I was authorized, would you? I would say the question, Your Honor, is who is authorized under the many cases that we've cited. You have no deal, though, until somebody draws down the money. That's correct. Because as it starts out, she makes an offer to you, right? I want a loan from you for 0%. But there's no. You rejected it. That's not correct, Your Honor. That's the district court's error. There was no offer to Green Sky. Green Sky is not a part of the loan agreement. It could not make an offer. It goes to you. It does not, Your Honor. I'm sorry. Did your client make an effort in this case to keep the bank out and say that your client was the proper party? I was not in the trial court, but the fact is the bank makes the loan. Do you know? Your Honor, the bank makes the loan. Do you know? Did your client make that representation? I know that they misnamed BMO Harris as the party because BMO Harris was not the one that was going to be subject to the arbitration. The arbitration agreement is what we're looking at here, not the loan agreement. Green Sky is not a party. They filed a lawsuit in federal court. I mean, BMO Harris is at some point going to be in that suit, aren't they? They can be, I suppose. Most of the time, lenders can be sued by consumers because they are the lender. I don't know what went through the strategic machinations of the plaintiff's counsel and how they don't, but I do know that they don't understand the Green Sky program and neither did the district court. All the district court had to do was to say, we have an agreement because that's what it says in the loan contract and we know that the loan was drawn down upon. Whether it was authorized, it's like a credit card, which everybody has agreed with. We all get credit cards. If the credit card is used, we're stuck with it. If we say it wasn't authorized, well, guess what? We're going to go to arbitration on whether it was authorized. That's exactly what happened here. The shopping pass is like a credit card. It was used. There's a dispute on the merits as to whether it was authorized. That's what's been delegated to the arbitrator. I'm sorry I've gone over my time, Your Honors. Any more questions? No. Hold on. Thank you, Your Honors. Appreciate the time. Good morning, and may it please the Court. Hannah Kieschnik on behalf of Abheli Retired Lieutenant Colonel Susan Preecey. I appreciate there are a lot of issues, but perhaps just to take a step back, here's how this case started. An RBA sales rep convinced Preecey to sign on a blank iPad screen so that she could apply for a loan with 0% interest. Even though that's all she did, defendants then said that Preecey was locked into paying RBA to install Windows using a loan with 25% interest, which would have more than doubled her costs. This is a case involving straightforward, these are issues involving straightforward questions of contract formation, and defendants' arguments violate these basic rules. Because Preecey didn't have notice and didn't assent, she didn't form either of the two agreements that defendants rely on to compel arbitration. I'd like to start perhaps with the who decides question. This is quite straightforward. As this court held in the Fedor case, the issue of whether an arbitration agreement was formed between the parties must always be decided by a court. And Ms. Preecey's arguments go directly to the very existence of arbitration clauses and arbitration agreements here. So the district court was correct to decide these formation questions. On the point of formation, I'll start with RBA, or renewal by Anderson, and the Windows contract. There are a number of reasons why that contract was not formed, not the least of which is that Preecey lacked the three basic requirements of reasonable notice. The first being that an offer to contract was being made at all. Second, how to accept that offer. And third, what the terms of that offer were. On that first point, Preecey didn't have notice that she was being presented with an offer to contract. I'd point the court to paragraph 13 of her declaration. She says, quote, I was never informed that my signature could be used on anything other than a credit check and a loan application. In other words, a reasonable consumer wouldn't have known that they were being presented with a contract to buy Windows then and there on the spot. Instead, submitting a loan application would make someone think this was the very start of a process that could eventually lead to them hearing back on the loan application, perhaps taking out the loan, and then deciding to buy Windows. Well, she did hear back on the loan application during that conversation with Anderson's rep, right? That's correct, but that happened approximately 30 minutes after RBA contends that the agreement was formed. And so hearing back over the phone that she had been approved for the two-year loan program wasn't sufficient to provide her with notice that she was being offered a contract to buy Windows at the time RBA says she actually agreed to buy the Windows. Which brings me to the second problem with reasonable notice here, which is that you have to have notice that the action you're undertaking is going to be construed as assenting to that particular contract. And here there's a mismatch. Again, for that problem of the RBA sales rep's representation, this is just for a credit check and a loan application. Here, her signature can't bind her to the Windows contract because she provided it for another purpose. On the final point of reasonable notice, when- She provided it for another purpose, but the contract itself indicates otherwise. Yes. And she has an obligation to read the contract, read what she's signing. There are two responses to that, Your Honor. The first is that when she went to sign the iPad, it was blank other than a signature line or a checkbox to populate her signature. So she had no visible notice that there were any terms. But didn't she have some responsibility to say, I have no idea what I'm signing. You need to show me this before I sign it. Yes, which brings me to the second point, which is whether we think of this as a duty to read issue or a duty to inquire, that kind of duty doesn't apply if there isn't first a predicate notice that there's a contract or terms being offered at all. Well, they're asking her to sign a bunch of times. I mean, isn't that a notice that you might be getting yourself into an agreement? Yes, and what she had notice of was what the RBA sales rep told her. Which is in dispute. Which actually is not in dispute. The RBA has not disputed Parisi's testimony in her declaration about anything to do with the contracting process. It hasn't disputed the two key facts here. The first being, here's what the RBA sales rep told me. This is for a credit check and a loan application. Not, this is an agreement to undertake legal obligations in this moment and buy windows here and now. And the second is that when she actually went to sign that iPad screen, it was blank. She couldn't see anything at all except for the signature line. So, she did sign, but she wasn't on notice about the purpose of the signature other than what the RBA sales rep had told her. She didn't have any other way to verify it. I think another way to think about this. Mr. Kelly was neither deposed nor filed a declaration, did he? That's correct. So, the only evidence we have of this session is from the plaintiff? That's correct. So, it has been. Is it disputed in any way in this record by the defendants? It has not been disputed by RBA. They have not, RBA has not disputed that she couldn't see the terms, the iPad screen other than the signature line. Here's what the RBA sales rep told her. Do you, never mind, go ahead. There wasn't anything in this contract, as there sometimes is, where something she signed had a box that said, I have read and I understood the terms of this contract. There is something akin to that, but again, she wouldn't have known to even ferret out that term for the context. Is she saying she didn't even see that? That's correct. That the screen was blank, didn't even have that term on it. That's correct. So, at paragraph 17 of her declaration, she says, here are the only two things I could see on this screen. A signature line or a check box. And when she checked that box, her signature popped up. That's it. There were no terms visible otherwise. And that obviously fails. What this court said. Can this be, I mean, I know there may be hard copy, but can this be recreated digitally so that on a screen, the signature page is by itself blank with no other text. Whereas on the hard copy, it would be all bunched together. Is that what happened? I mean, there's no text at all. There's no text at all. It has been undisputed. There's no text at all but for that line. On any of the places where she signed her name. That's correct. And also on any screen where she checked a box. That's correct. Nothing at all. And that obviously fails what this court described. There was a declaration by somebody. I can't think of the name of the person. Yes. I think it was Erickson. I could be wrong on that name and I apologize if that's the case. Or Caliban, which would be for Green Sky. The declaration. Did anybody explain or address this declaration by the plaintiff that the only thing on the screen were signatures and check boxes? That has gone entirely unrefuted. All right. Can you tell from her declaration that as Kelly scrolled through this, there was text. It just wasn't on the page where she signed? No, Your Honor. This wasn't like what you could imagine, which is scrolling through a number of pages and seeing the text kind of fly by. Being like, whoa, slow down. That is not what Parisi has testified. What she has said is that the RBA sales rep swiped through screens and all that she could see was the signature line. So it went blank screen with line to blank screen with either check box or line. And just to give the reference points, excuse me, that would appear among other paragraphs. Paragraph 17 of her declaration. That's a problem because at the bare minimum, there has to be reasonable notice of the terms of the contract. They have to be at least reasonably conspicuous or clearly presented. And a blank screen, it falls far short of that requirement. And, again, just to refer to, well, wouldn't she have known perhaps that she was agreeing to something? It's the combination of these two problems. This is what the RBA rep said, and then she couldn't verify that in any other way because there weren't any visible terms on the screen. And so she had no reason to inquire. And that duty to apply, excuse me, that duty to inquire or read only applies once there's that predicate notice. Which paragraph of the declaration states what she thought she was doing? Sure. So a few paragraphs. I would point the court to paragraph 13 where she says, I was never informed that my signature could be used on anything other than a credit check and a loan application. She states throughout her declaration, for example, after she signed that first time, then Mr. Kelly swiped the iPad in an upward motion. Again, no terms were visible. And then he stated he needed some additional, excuse me, signatures to secure the zero interest for two years and no payments for two years loan program. In other words, this was just to apply for a loan. It wasn't to undertake legal applications and buy the windows then and there. If the court has no further questions, I apologize. And then after she signed and then there's this telephone call where the Anderson representative holds out the phone and says, oh, your financing application has been accepted, right? That's correct. Her affidavit says something to that. Yes. She couldn't see any terms related to the loan agreement. But and what did anyone ask the question? Did she ask or was she told this is the financing agreement you need, which is the zero percent, 24 months? There just wasn't any further conversation? Not that we are aware of and not that Ms. Parisi has testified to. The next step was. No one clarified with her at that point that she had not been approved for the promotional financing, which she had said she needed. That's correct. What they did do appears at paragraph 26 of her application. Green Sky's telephone representative said, congratulations, you've been approved for the two-year loan program with Green Sky. A reasonable consumer under those circumstances would think the loan I think I applied for was approved. How great. Presumably this will then start the process of looking at those loan terms, deciding to take them, entering into that contract, and only then going to buy the windows. So let me ask you a question that I didn't necessarily get an answer to on the last one. Is there any text in this Anderson agreement that says that Anderson is authorized to draw down on the shopping pass and essentially obligate her? Green Sky hasn't pointed to anything in the windows contract that authorizes renewal by Anderson. I'm asking you, do you believe there is any text? I have not been able to find. Okay. Or you are hereby authorizing us to take out or to agree to a loan on your behalf. And that is what would be required for a contract, for the loan agreement contract to be formed. The loan agreement is clear on how to accept. Either the borrower uses the shopping pass or, to quote the loan agreement at page 68 of the record, an authorized user uses the shopping pass. And because the question of whether an agreement was accepted in the manner that it prescribes goes directly to contract formation, this is a question for the court, and the district court was correct to conclude there was no evidence of authorization. So the loan agreement was not accepted, not formed, and can't support a motion to compel arbitration. I see my time is up, but otherwise we would rest on our papers and ask this court to affirm. Well, help me. I thought in one of the two agreements that there was a provision that authorized Anderson to draw this down. And you're telling me no. Is that correct? That's correct. I mean, I can look at the hard copy of both agreements, and there is nothing, nothing that says that Anderson can draw on this loan, authorize it. Not that I can see explicitly. So if they install one window, how is the loan activated then? Unless Anderson says to the servicer, pay me. My understanding of the contracts here, and forgive me if I'm misunderstanding your honors question, I think the loan agreement would have had to be formed before there could be any deposit that would then trigger RBA to actually start installing windows. And here, neither of the contracts was formed, both because there wasn't, Parisi hadn't authorized anyone to use the shopping pass for her. There's nothing in, and I'll point your honor to the, I think the best they could do for authorization, but there's nothing that authorized RBA to accept a loan on her behalf, and RBA. What, have the defendants said, what is it in either of these two contracts that would cause Green Sky to allow this $8,000 plus charge? No, and in fact, I think we heard the concession in the first 15 minutes today that Green Sky has no visibility into authorization. It doesn't know who authorized the drawdown or use of the shopping pass, and that's a problem because there were only two ways to accept the loan agreement. Either the borrower used the shopping pass, and Parisi has been clear she did not, and she has also been clear that she didn't authorize. The only evidence that Green Sky, or excuse me, she didn't authorize anyone to use the shopping pass for her. That's at paragraph 46 of her declaration. The only evidence that Green Sky has offered is the mere fact of use of the shopping pass, but that's not sufficient. That's that, your reference to that voucher or whatever it was. A separate document indicating this transaction, correct? That's correct, yes. And your honor, you asked, there's absolutely no reference to the shopping pass and the windows contract, nor is there a reference to I'm authorizing you to take out loans on my behalf or accept a loan on my behalf, and particularly not a loan with such markedly different terms from 0% to 25% from payments in 24 months to 18 months earlier. I appreciate that my time is up. Thank you very much. I'm going to let you guys have, if you want. Let's give you two minutes of rebuttal because we've gone over too much. Yes, your honor, thank you. The type of arguments that have been raised by Parisi are fraud in the execution and lack of notice. Those were never raised before. We never had an opportunity to respond to those types of actions. To what we were just discussing, where in either contract does it allow Anderson to effectively get money on this loan? I was looking for it and I couldn't find it, your honor. Okay, so she didn't authorize it. Anderson didn't have the power to. Nobody else had the power. How was it authorized? It's very possible it's in the contract and I just couldn't locate it. Your honor, we believe that the arguments that have been raised are illusory type arguments and that this court's decision in 2016, Henry Cox, which considered the same type of illusory type arguments as to whether or not the contract was valid or not. The court had to decide, like here, whether those arguments challenged the entire agreement or the arbitration clause. The court held, we hold this is a challenge to the entire agreement because arbitration clause is unenforceable only if the entire agreement is unenforceable. So even though the court recognized that the consumer might be right, they said it was for the arbitrator to decide and that's the key issue. Is it for the arbitrator to decide or the court to decide these disputes among these parties? And 60 years of Supreme Court precedent says that this decision goes to the arbitrator. There was never any challenge to the delegation clause, never any challenge to the arbitration agreement. The only challenge they now raise is this formation issue under fraud in the execution and lack of notice, which was never raised below. Well, that's part of it.  Maybe against your client. I mean, the argument against Green Sky is a little bit different. Yes. Your honor, I'm out of time.  Never mind, she answered it. I think just to be clear, your answer is you don't know where in this contract there's, at least the Anderson contract, there's any text that gives your client the authorization to draw down on that shopping pass without her doing something first. I cannot answer that here today. Okay. Thank you, counsel. I appreciate your arguments. The case will be submitted and counsel are excused. Thank you.